### Adino N. Brackett *et a. versus* Thomas S. Tillotson.

Where the land of an intestate had, through the negligence of the administrator been sold for taxes, and the administrator, in order to redeem the land, had been compelled to pay the expenses of the sale, it was held that he was not to be allowed, in the settlement of his account in the probate court, the money paid for such expenses.

Nor is an administrator to be allowed for monies by him expended in repairs of the real estate, however necessary such repairs may be.

Where an administrator, in selling the personal property of his intestate under a license from the judge of probate, conducts the business in such a manner as is likely to injure the sale of the goods and becomes himself a purchaser, he is to be considered, when the goods sell for less than the appraised value in the inventory, as having made the sale on his own account, and at his own expense, and is to be charged with the appraised value.

This was an appeal from a decree of the judge of probate, in this county, allowing the account of the said Thomas S. Tillotson, as administrator of the estate of John M. Tillotson, deceased.

The intestate died on the 22d August, 1822. The said Thomas was appointed administrator on the 3d September, in the same year. On the 26th December, 1822, certain lands belonging to the estate in Columbia, were sold for the taxes of 1822, and purchased by the said Thomas, and he claimed to be allowed $8, 18 for the additional expense of the sale above the taxes.

On the 10th March, 1823, certain lands belonging to the estate in Lancaster were sold for taxes of 1822, and the administrator claimed to be allowed $11, paid by him over and above the amount of the taxes to redeem the land.

Certain lands of the intestate were sold for the taxes of 1823 and 1824, and bought by the administrator for the purpose of strengthening the title, but he never took any deed; and the lands were afterwards sold as the estate of the intestate. The administrator claimed to be allowed $33 for the costs and charges of said sales for taxes, over and above the amount of the taxes.

*By the court.* There is no pretence that these sums, amounting to $52,18, can be allowed. It was the duty of the administrator to have prevented a sale of the land by paying the taxes, and he cannot be allowed for expenses caused by his own neglect. With the title of the real estate he had nothing to do, and most clearly cannot be allowed for expenses incurred in an ineffectual attempt to strengthen it.

Brackett et a.
*v.*
Tillotson.

The administrator also claimed to be allowed $194,19, being money by him expended in necessary repairs of certain mills, mill dams, and buildings belonging to the estate, the same being insolvent.

*By the court.* When the intestate died, his real estate descended to his heirs, and they had a right to enter and take the profits, until their title should be divested by a legal sale of the land for the payment of the debts. Whether the heirs can, in such a case, be held to account for the profits thus received when the estate is insolvent, is a question which it is not necessary to settle in this case ; 16 Mass. Rep. 280, *Gibson* v. *Farley* ; because we are of opinion, that, the estate being insolvent, it was the duty of the administrator, instead of repairing, to have immediately sold, the real estate, and applied the proceeds to the payment of the debts. This is all the right he could, by law, have to meddle with the real estate, as administrator, and it is clear that this claim cannot be allowed.

The administrator further claimed to be allowed $40,92, which was paid by him for grave-stones erected at the grave of the deceased.

*By the court.* The statute of 1826, cap. 43, empowers the judges of probate, in the settlement of the accounts of executors and administrators of estates, actually solvent, to allow such reasonable sums as they may think proper, for the erection of suitable monuments, or grave-stones, at the graves of their testators or intestates. This statute makes a distinction between the case of a solvent,

and of an insolvent, estate, and in our opinion with good reason. For whatever is allowed to executors and administrators for this purpose, is in fact allowed at the expense of heirs and legatees, or of creditors. And however fit and proper it may be that monuments should be erected at the expense of heirs and legatees, we are not aware of any principle of equity or justice which can require a creditor to contribute any thing for the erection of a monument at the grave of his insolvent debtor. This claim of the administrator cannot be allowed.

The administrator claimed to have the sum of $210,25, allowed him, being the sum at which the produce of certain farms of the intestate had been valued in the inventory, but which had been consumed by the cattle on the farms, before they were sold under a license from the judge of probate, in March, 1823. The farms had been leased by the intestate and the cattle were the joint property of the lessor and lessees, and there was an agreement between them, which expired in the spring of 1823, that the cattle should be kept on the produce of the farms.

*By the court.* We entertain no doubt that this claim ought to be allowed.

The administrator claimed to be allowed the sum of $510,62, being the difference between the appraised value of personal property in the inventory, and the proceeds of the sale of the same under a license from the judge of probate, amounting to $456,63, and the expenses of the sale, amounting to $53,99. The property sold was appraised at the sum of $1688,37, and the proceeds of the sale amounted only to $1231,74. The sales were adjourned from time to time, so that in all there were twenty different days appointed, on some of which no sales were made, on others, property to a small amount was sold. At one sale the administrator bought property to a considerable amount, in the name of one of his brothers, but in fact, for his own use. The administrator was also the purchaser of property to a considerable

amount in his own name, and other persons bid off prop- <span>Brackett et a.<br>*v.*<br>Tillotson.</span>
erty at the different sales which was left in the hands of
the administrator and afterwards treated as his own.
Prior to the sale of certain machines, on the sale of which
one half the whole loss accrued, the administrator made
an agreement with two other individuals, that one of
them should become the purchaser of the machines at
the time of the sale, that the three should be jointly and
equally interested in the purchase, and that one should
not raise the bid of another.

*By the court.* It is certainly possible, that these sales
were as productive as they would have been, if they had
been conducted in a different manner. But we think that
no countenance is to be given to this mode of proceed-
ing. It does not appear why twenty different days were
appointed for the sales. Such a course was likely to dis-
courage the attendance of those who might have been
disposed to purchase, and gave to the administrator a very
favorable opportunity to buy at a low price. The bar-
gain made by the administrator with those who joined
him in the purchase of the machines was highly improp-
er. 6 Johns. 194, *Doolin* v. *Ward ;* 8 ditto, 444, *Wilbur*
v. *How ;* 3 Brod. & Bing. 116, *Fuller* v. *Abrahams.* The
purchases made by the administrator, in his own name,
and in the name of others, were illegal. The reasons of
this we have heretofore fully stated. 2 N. H. Rep. 225,
*Currier* v. *Green ;* 3 N. H. Rep. 144, *Perkins* v. *Thompson.*

When an executor or administrator sells the goods
under a license from the judge of probate, and conducts
the sale with good faith, any loss upon the goods is to be
the loss of those interested in the estate. But if he man-
age the auction in a manner which is likely to injure the
sale of the goods, and become himself the purchaser ; or
if he be guilty of fraud and collusion in the sale, he is to
be accountable for the appraised value of the goods, and
the sale must be considered as made on his own account
and at his own expense. And we are of opinion that this

Brackett et a.
　　*v.*
Tillotson.

administrator has so conducted the sales, in this instance, as to have made the loss and expense his own. This claim is therefore disallowed.

　　*Sheafe* and *Pearson*, for the appellants.

　　*Cushman* and *Woodbury*, for the administrator.